# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

FALLS LAKE NATIONAL INSURANCE
COMPANY,

     Plaintiff,                         CASE NO: 3:21-cv-00828

vs.

AJD BUSINESS SERVICES, INC.,
RUSSEL ROGATENKO, and MELISSA
DZION,

     Defendants.

_____/

## DEFENDANT MELISSA DZION'S ANSWER &
## AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT
## AND
## <u>COUNTERCLAIM AGAINST FALLS LAKE</u>

Defendant, Melissa Dzion, hereby answers the Amended Complaint for

Declaratory Relief as follows:

1.    Admitted that Falls Lake effectuated a partial settlement of some

claims during the litigation and that it is seeking a declaration that "it has no

responsibility for the judgment."  The remaining allegations in paragraph 1 are

Denied.

2.    Admitted there is complete diversity of citizenship between plaintiff

and defendants; otherwise, without knowledge and therefore Denied.

3.     Admitted.

4.     Defendant Dzion lacks sufficient information to determine the accuracy of this allegation, and it is therefore Denied.

5.     Admitted as to everything but the implication that the liability coverage of $1,000,000 was the "only" coverage available under the policy.

6.     Admitted.

7.     Admitted.  However, after Falls Lake refused to continue defending Rogatenko, he was forced to file bankruptcy and was dismissed from the underlying case in early 2020 as a result of the federal stay.

8.     Admitted.

9.     Admitted that on 9-4-2017, Rogatenko was driving for AJD and that his negligence was a legal cause of the death of Connor Dzion.  The remaining allegations in paragraph 9 are Denied as phrased.

10.     Admitted.

11.     Admitted.

12.     Admitted that the Falls Lake policy in place at the time of the accident provides $1 million in liability coverage.  The remaining allegations in

paragraph 12 are Denied as phrased.

13.    Denied.

14.    Admitted.

15.    Denied as phrased.

16.    Denied as phrased.

17.    Defendant Dzion lacks sufficient information to determine the accuracy of this allegation, and it is therefore Denied.

18.    Denied.

19.    Admitted that on or about February 15, 2019, Melissa Dzion, as the Personal Representative of the Estate of Connor Dzion, deceased, executed the document attached to Plaintiff's Amended Complaint as Exhibit "B."    The document speaks for itself.    The remaining allegations in paragraph 19 are Denied as phrased.

20.    Admitted that Fall's Lake paid $1,000,000 on behalf of AJD and Rogatenko.  The remaining allegations in paragraph 20 are Denied.

21.    Denied.

22.    Admitted.

23.    Defendant Dzion lacks sufficient information to determine the

accuracy of this allegation, and it is therefore Denied.

24.    Admitted that Falls Lake "withdrew from participating in the defense of AJD and Rogatenko[.]"  The remaining allegations in paragraph 24 are Denied.

25.    Defendant Dzion does not understand what Plaintiff means by its statement that Dzion "never challenged the exhaustion of the Falls Lake policy." As such, Defendant Dzion lacks sufficient information to determine the accuracy of this allegation as to Dzion.  Defendant Dzion also lacks sufficient information to determine the accuracy of this allegation as to AJD and Rogatenko. Accordingly, paragraph 25 is Denied in its entirety.

26.    Admitted that Exhibit "E" referenced is a true and correct copy of the jury's verdict against AJD.  The remaining allegations in paragraph 26 are Denied.

27.    Admitted.

28.    Defendant Dzion lacks sufficient information to determine the accuracy of this allegation, and it is therefore Denied.

## Count I - Exhaustion

29.    Defendant Dzion incorporates her prior responses to paragraphs 1

through 28.

30.     Admitted that the policy contains the quoted language; otherwise,

Denied.

31.     Admitted that Falls Lake settled the wrongful death claim for

$1,000,000, as reflected in Exhibit "B" to Plaintiff's Amended Complaint.   The

remaining allegations in paragraph 31 are Denied.

32.     Denied.

**Count II – Punitive Damages**

33.     Defendant Dzion incorporates her prior responses to paragraphs 1

through 28.

34.     Admitted that the policy contains the quoted language; otherwise,

Denied.

35.     Admitted.

36.     Denied as phrased.

**Count III – Coverage for Punitive Damages is Against Public Policy**

37.     Defendant incorporates her prior responses to paragraphs 1 through

28.

38.     Denied.

To the extent that the "Wherefore" clause following paragraph 38 contains any additional allegations against Defendant Dzion, such allegations are Denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The automotive policy at issue was "issued and delivered in New York" by Falls Lake.  (Amd. Compl. par. 11).  Under the doctrine of lex loci contractus, New York law applies to issues concerning the validity of provisions of the Falls Lake policy.  The provision relied on by Falls Lake to justify abandoning its insureds mid-litigation after rejecting a prior offer to resolve the entire case for the policy limits was and is illegal under New York law, and, thus, ineffective to relieve Falls Lake of its duty to defend AJD through the conclusion of the litigation.  *See, e.g.*, 11 NYCRR § 60-1.1(b) (entitled "Mandatory Provisions"); *Liberty Mut. Fire Ins. Co. v. Nat'l Cas. Co.*, 90 A.D.3d 859, 935 N.Y.S.2d 319 (2011) (holding that "11 NYCRR § 60-1.1(b) has been interpreted as requiring an automobile liability insurer to pay all defense costs until a case ends and not excusing it from providing a full defense by payment of its policy limit" and thus holding that the conflicting language in the policy which purports to terminate the liability insurer's duty to defend upon the exhaustion of its policy limits is

unenforceable).

## Second Affirmative Defense

Falls Lake is not entitled to the relief it now seeks under the doctrine of unclean hands. Fall Lake's prior breach of its contractual obligations and its duty of good faith preclude plaintiff from seeking to invoke this Court's equitable jurisdiction.

Falls Lake owed its insured, AJD Business Services, Inc. ("AJD") a duty of good faith in all aspects of its handling of the underlying claims and defense of the underlying lawsuit. Prior to terminating its defense, Falls Lake breached that duty of good faith by failing to settle when it could and should have done so, had it been acting fairly and honestly toward its insured AJD and with due regard for AJD's interests. Thereafter, Falls Lake acted in bad faith and breached its contractual duty to defend AJD when it wrongfully refused to continue defending AJD from the underlying lawsuit and abandoned its insured during the pendency of the litigation.

## <u>COUNTERCLAIM AGAINST FALLS LAKE</u>

Counter-Plaintiff, Melissa Dzion, hereby brings this action against Counter-Defendant, Falls Lake National Insurance Company ("Falls Lake"), and

alleges:

1.     This is an action for damages in excess of $75,000.00, over which this Court has jurisdiction under 28 U.S.C. § 1332.

2.     Melissa Dzion is a citizen of Florida.

3.     At all relevant times, Falls Lake was and is an Ohio corporation, with its principal place of business in North Carolina.

4.     This Court is a proper venue under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

5.     At all relevant times, AJD Business Services Inc. ("AJD") owned a 2017 HINO commercial truck bearing VIN 5PVNJ8JV8H4S64079 (hereinafter "AJD's truck", or the "HINO truck").

6.     At all relevant times, AJD had the right to possess and control the HINO truck.

7.     At all relevant times, Russel Rogatenko was employed by AJD as a truck driver, and serving as its employee or agent.

8.     At all relevant times, Rogatenko possessed AJD's truck with the knowledge and consent of AJD.

9.     Rogatenko never had Commercial Driver's License (instead only carrying a Class E license).

10.    As of September 4, 2017, Rogatenko was a dangerous driver, unfit to operate a commercial truck in interstate commerce, with a criminal, traffic, licensure and driving history that included:

    a.  Texting while driving

    b.  Multiple prior crashes rear-ending vehicles

    c.  Careless Driving x 2

    d.  Robbery, 3 years prison

    e.  Attempted Robbery, 3 years prison

    f.  Criminal Driving with No Valid (Suspended) License

    g.  Speeding 80 in 65 (on I-95)

    h.  Arson to Property to Defraud, 5+ years prison

    i.  Overweight Violation in CMV (Nassau County, I-95)

    j.  Speeding (Flagler County)

    k.  Attempted Burglary, 5 years prison (parole supervision end August 3, 2017)

    l.  Driving with Expired Registration

m. Aggressive Driving speed 95mph (70 zone) on I-95 southbound, Following Too Closely, March 8, 2017

n. Record of Duty Status Log Book Violation, CMV, (Nassau County, I-95), July 16, 2017

o. Careless driving CMV, cause rear-end CRASH, on I-95 approaching SR 200 in Nassau County Florida, July 16, 2017

11. At all relevant times, including on September 4, 2017, AJD allowed and even encouraged Rogatenko to drive illegally and over hours in AJD's truck.

12. On September 4, 2017, at approximately 9:10 p.m., Rogatenko was driving AJD's truck within the course and scope of his employment with AJD on Interstate-95 ("I-95") southbound approaching the intersection of Florida SR 200 in Nassau County, Florida.

13. At that time and place, while speeding and distracted by his cell phone, Rogatenko negligently operated the AJD truck such that he caused a rear-end collision.

14. The AJD truck flipped and came to a rest in the roadway blocking the travel lanes of I-95 South, approaching the SR 200 exit.

15. As a direct and proximate result of the collision, traffic was backed

up and forced to stop on I-95 South.

16.     As a direct and proximate result of the collision and ensuing traffic backup, Connor Dzion was forced to stop his car on I-95 South, immediately north of the Rogatenko/AJD crash scene.

17.     On September 4, 2017, at approximately 10:34 p.m., while at a dead stop in traffic on I-95 South, Connor Dzion's car was rear-ended by a tractor trailer owned by Kahkashan Carrier Inc. ("KCI"), whose driver failed to perceive the traffic backup in time to avoid the collision.

18.     Although Connor lived for a short while after his vehicle was hit by the KCI truck, he died and was pronounced dead at the scene.

19.     Connor's mother, Melissa Dzion, and brother, Colin Dzion, went to the crash scene in search of Connor, uncertain of his fate.

20.     Melissa Dzion eventually found Connor's crushed car and learned from first responders that Conner, whose body lay motionless on the roadway, had died.

21.     Melissa Dzion was distraught and overcome with grief due to witnessing the horror of the immediate aftermath of this violent collision, the scene, and the severe injury and death to her son Connor.

22. On September 4, 2017, AJD and Rogatenko were insured against liability claims arising out of the operation and use of the AJD truck under a policy of automobile insurance issued by Falls Lake, having combined bodily injury liability and property damage liability limits of $1 million per occurrence ("the Policy"). A complete, accurate copy of the Policy is available at Dkt. 5-1.

23. The Policy was in full force and effect on the date of loss.

24. AJD and Rogatenko complied with all terms and conditions of the Policy.

25. Colin Dzion and Melissa Dzion, individually, made claims against AJD and Rogatenko for negligent infliction of emotional distress.

26. Melissa Dzion, as personal representative of the Estate of Connor Dzion, made a wrongful death claim against AJD and Rogatenko.

27. The Dzions' claims against AJD and Rogatenko were covered by the Policy.

28. Given the nature of the collision and the significant losses suffered by the Dzions, a reasonably prudent person faced with the prospect of paying Dzions' claims would have settled those claims within the limits of available coverage if it had been possible to do so.

29.     Considering Melissa Dzion's allegations regarding Rogatenko's and AJD's conduct and all the circumstances surrounding the collision, Falls Lake knew or reasonably should have known that in addition to the compensatory damages for the wrong death of a child, the Dzions' would seek to recover punitive damages if Falls Lake did not settle the Dzions claims within the Policy limits.

30.     On November 6, 2017, the Dzions' attorneys sent Falls Lake a letter expressly offering to settle all claims against AJD and Rogatenko which arose from the collision for the payment of the $1 million liability limits.

31.     Falls Lake requested and received a 30-day extension of time to respond to the Dzions' settlement offer.

32.     On January 4, 2018, Falls Lake's attorney responded to reject the Dzions' settlement offer.

33.     In that January 4, 2018 letter, Falls Lake did not make any offer to settle the Dzions' claims.

34.     On or about January 11, 2018, Melissa Dzion, individually and as personal representative of the Estate of Connor Dzion, and Colin Dzion filed a lawsuit against AJD and Rogatenko, among others, in Duval County, Florida.

That lawsuit was ultimately transferred to Nassau County, Florida, and assigned Case No. 2018-CA-000148.

35.    Falls Lake initially undertook to defend AJD and Rogatenko from the underlying lawsuit.

36.    On or about February 15, 2019, Falls Lake agreed to tender AJD and Rogatenko's $1 million policy limits in exchange for a release from Melissa Dzion, as Personal Representative of the Estate of Connor Dzion, for only the wrongful death case.  A complete, accurate policy of the "General Release and Settlement Agreement" is available at Dkt. 5-2.

37.    Melissa Dzion's claim for negligent infliction of emotional distress was explicitly carved out from the General Release and Settlement Agreement, such that it would remain pending in the underlying lawsuit after the settlement and proceed to verdict.

38.    Notwithstanding, following the execution of the General Release and Settlement Agreement, Falls Lake terminated its defense of AJD and Rogatenko.

39.    Falls Lake took the position that it was permitted to terminate its defense under a provision in the Policy which states: "Our duty to defend or

settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements."

40.     The above-quoted Policy provision is illegal and unenforceable.

41.     On or about March 14, 2019, AJD's and Rogatenko's counsel, which had been appointed by Falls Lake, filed a motion to withdraw, stating it was instructed to do so by "the insurance carrier."  That motion was ultimately granted.

42.     Rogatenko eventually filed for bankruptcy and was dismissed from the underlying lawsuit.

43.     However, Melissa Dzion continued to litigate her claim for negligent infliction of emotional distress against AJD.

44.     After AJD's counsel withdrew at the instruction of Falls Lake, AJD was left undefended.

45.     AJD did not have the financial means or wherewithal to hire its own defense attorneys.

46.     On or about June 28, 2021, AJD was defaulted for failing to file an answer or otherwise respond to the operative Complaint.

47.     Melissa Dzion's claims against AJD proceeded to trial, at which AJD

was undefended.

48.     On August 20, 2021, the jury awarded Melissa Dzion $16 million as compensatory damages, plus an additional $900 million in punitive damages, on her claim against AJD.  A complete, accurate copy of the verdict is available at Dkt. 5-5.

49.     On August 24, 2021, the trial court entered final judgment pursuant to the jury verdict in favor of Melissa Dzion and against AJD, a complete, accurate copy of which is available at Dkt. 5-6.

50.     Dzion has standing to bring this action as a judgment creditor to Falls Lake's insured, AJD, and as a third-party beneficiary to Falls Lake's contract with AJD.

51.     Falls Lake owed AJD a non-delegable fiduciary duty to protect it from a judgment that exceeded its limits of liability insurance and to act in its best interest throughout the handling of Dzion's claim.

52.     This fiduciary duty obligated Falls Lake to, among other things:

a.  act fairly and honestly and with due regard for the interests of its insured;

b.  exercise reasonable diligence and a level of care commensurate with

the undertaking, in every aspect of handling Dzion's claim against its insured;

c.   work on the insured's behalf to avoid an excess judgment with the same haste and precision as if it were in the insured's shoes;

d.   settle Dzion's claims against its insured, when, under all the circumstances of the case, it could have and should have done so had it acted fairly and honestly, and with due regard for the interests of its insured;

e.   adopt and implement standards for the proper investigation and handling of liability claims, commensurate with the needs of the types of claims reasonably anticipated to be presented against its insured;

f.   properly train adjustors and claims personnel for the types of claims which would be undertaken by those employees;

g.   communicate with the insured candidly and with complete integrity, and keep the insured informed of the claim resolution process;

h.   fully, honestly and promptly advise the insured concerning any

settlement opportunities, of the likelihood of a recovery in excess of the policy limits, of the steps they might take to avoid the same, and of any procedures which were available to lessen the financial impact of the underlying claims against it;

i.  provide an adequate, conflict-free defense for the insured for the duration of the underlying litigation;

j.  avoid putting Falls Lake's own interests ahead of its insured's interests; and

k.  handle the bodily injury claims in accordance with applicable laws, statutes, governmental and industry regulations that establish the obligations and standard of conduct for liability insurance companies handling claims, as well as Falls Lake's own policies.

53.   Falls Lake breached its non-delegable fiduciary duties owed to AJD by, *inter alia*,

a.  failing to act fairly and honestly and with due regard for the interests of its insured;

b.  failing to exercise reasonable diligence and a level of care commensurate with the undertaking, in every aspect of handling

18

Dzion's claim against its insured;

c.  failing to work on the insured's behalf to avoid an excess judgment with the same haste and precision as if it were in the insured's shoes;

d.  failing to settle Dzion's claims against its insured, when, under all the circumstances of the case, it could have and should have done so had it acted fairly and honestly, and with due regard for the interests of its insured;

e.  failing to adopt and implement standards for the proper investigation and handling of liability claims, commensurate with the needs of the types of claims reasonably anticipated to be presented against its insured;

f.  failing to properly train adjustors and claims personnel for the types of claims which would be undertaken by those employees;

g.  failing to communicate with the insured candidly and with complete integrity, and keep the insured informed of the claim resolution process;

h.  failing to fully, honestly and promptly advise the insured concerning any settlement opportunities, of the likelihood of a

recovery in excess of the policy limits, of the steps they might take to avoid the same, and of any procedures which were available to lessen the financial impact of the underlying claims against it;

i.   failing to provide an adequate, conflict-free defense for the insured for the duration of the underlying litigation;

j.   putting Falls Lake's own interests ahead of its insured's interests; and

k.   failing to handle the bodily injury claims in accordance with applicable laws, statutes, governmental and industry regulations that establish the obligations and standard of conduct for liability insurance companies handling claims, as well as Falls Lake's own policies.

54.   As a direct and proximate result of Falls Lake's breaches of these duties, Dzion's claims against AJD did not settle within the amount of available insurance coverage, and AJD suffered damages, including the entry of the final judgment available at Dkt. 5-6.

55.   All conditions precedent to bringing this action have occurred or been excused.

WHEREFORE, Counter-Plaintiff, Melissa Dzion, demands judgment against Counter-Defendant, Falls Lake National Insurance Company, in excess of $75,000, including all consequential damages and all unpaid and unsatisfied amounts of the final judgment and interest on those elements of damages upon which interest may be recovered, plus costs of this action and attorney's fees to the extent allowed by law.

## DEMAND FOR JURY TRIAL

Defendant / Counter-Plaintiff, Melissa Dzion, demands a trial by jury on all issues so triable.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** than on **September 22, 2021**, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

**Sina Bahadoran** & **Sergio Bueno** (counsel for Falls Lake National Insurance Company);

> **PAJCIC & PAJCIC, P.A.**
>
> /s/ *Benjamin E. Richard*
> _____
> BENJAMIN E. RICHARD
> Florida Bar No.: 13896
> CURRY GARY PAJCIC

Florida Bar No.:  21301
*Lead Counsel*
ELIZABETH T. CARDENAS
Florida Bar No.: 118126
One Independent Drive, Suite 1900
Jacksonville, FL 32202
Telephone: (904) 358-8881
Telefax: (904) 354-1180
Email: Ben@pajcic.com; Curry@pajcic.com; Betsy@pajcic.com
Secondary   email:   Rose@pajcic.com   & Matt@pajcic.com
*Counsel   for   Defendant/Counter-Plaintiff Melissa Dzion*